CHOCOLA v DEPARTMENT OF TREASURY

ROBERTS v DEPARTMENT OF TREASURY

Docket Nos. 73832, 74347. Argued January 9, 1985 (Calendar Nos. 8, 9).—Decided June 25, 1985.

J. Byron Chocola and Caryl M. Chocola petitioned the State Board of Tax Appeals seeking a redetermination of an assessment of taxes on distributable income from an out-of-state subchapter S corporation. The board held that the income was allocable to Michigan, but found the plaintiffs entitled to a credit for income tax paid to the corporate-situs state. The Court of Appeals, MACKENZIE, P.J., and M. J. KELLY and EVERETT, JJ., reversed and remanded for a recomputation of plaintiff's Michigan tax liability, holding that the income was apportionable and hence excludable from their Michigan tax base and that the plaintiffs were entitled to a credit for taxes paid to the corporate-situs state on income finally subjected to tax in Michigan (Docket No. 67403). The department appeals.

Donald H. Roberts and Anne B. Roberts petitioned the Michigan Tax Tribunal, challenging an assessment of taxes on income derived from an out-of-state subchapter S corporation. The tribunal affirmed the inclusion of the income in the plaintiffs' Michigan tax base, but allowed a credit for taxes paid to the corporate-situs state on the same income. The Court of Appeals, DANHOF, C.J., and ALLEN and D. E. HOLBROOK, JR., JJ., ordered the case held in abeyance pending decision by the Supreme Court in *Chocola* (Docket No. 73728). The department appeals.

In an opinion by Justice BOYLE, joined by Chief Justice WILLIAMS and Justices RYAN, BRICKLEY, CAVANAGH, and RILEY, the Supreme Court *held:*

Income from out-of-state subchapter S corporations is business income under applicable Department of Treasury rules and may be apportioned and thereby excluded from a Michigan resident's tax base. To the extent that such income is ulti-

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 71 Am Jur 2d, State and Local Taxation §§ 574-577.
Construction and application of Uniform Division of Income for Tax Purposes Act. 8 ALR4th 934.

[2] 71 Am Jur 2d, State and Local Taxation § 470.

mately taxed both in Michigan and out-of-state, the taxpayer is entitled to a tax credit.

1. Taxable income under the Michigan Income Tax Act is federally defined adjusted gross income subject to adjustments from allocation and apportionment provided in the act. Under the provisions, a Michigan resident's income from any source is allocable to Michigan unless statutorily attributable to another state. Subchapter S of the Internal Revenue Code allows qualifying corporations to elect a status analogous to that of a partnership and avoid federal taxation at the corporate level; income of the corporation is instead passed through to its shareholders and is taxed as individual adjusted gross income. Because taxable income under the Income Tax Act is federal adjusted gross income, income from a subchapter S corporation is included in a resident's Michigan tax base, subject to apportionment and allocation rules.

2. Under the Income Tax Act, business income is apportionable to Michigan and other states according to a formula provided in the act, while nonbusiness income must be allocated to Michigan. Department of Treasury rules reasonably implementing the apportionment provisions of the act provide that distributable income from a subchapter S corporation is business income and thus apportionable.

3. Because the Michigan apportionment formula might result in double taxation of distributable income from an out-of-state subchapter S corporation, a Michigan resident is allowed a credit against Michigan tax liability under the Income Tax Act where such income is also taxed in the corporate-situs state.

*Chocola,* affirmed.

*Roberts,* reversed and remanded.

Justice LEVIN took no part in the decision of these cases.

132 Mich App 820; 348 NW2d 290 (1984) affirmed.

1. TAXATION — INCOME TAX — SUBCHAPTER S CORPORATIONS — APPORTIONMENT.

Income from out-of-state subchapter S corporations is business income under applicable Department of Treasury rules and may be apportioned and thereby excluded from a Michigan resident's tax base; to the extent that such income is ultimately taxed both in Michigan and out-of-state, the taxpayer is entitled to a tax credit (26 USC 1371-1379; MCL 206.4[2], 206.103, 206.105, 206.110, 206.115, 206.255; MSA 7.557[104][2], 7.557[1103], 7.557[1105], 7.557[1110], 7.557[1115], 7.557[1255]; 1979 AC, R 206.12).

2. TAXATION — INCOME TAX — SUBCHAPTER S CORPORATIONS —
   ADJUSTED GROSS INCOME.

    Taxable income under the Michigan Income Tax Act is federally
defined adjusted gross income subject to adjustments from
allocation and apportionment provided in the act; because
income from a subchapter S corporation is included in an
individual's adjusted gross income for federal tax purposes, it is
included in a Michigan resident's state tax base (26 USC 1371-
1379; MCL 206.30[1][k]; MSA 7.557[130][1][k]).

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *Darrell A. Lindman*), for plaintiffs Chocola.

*Barris, Sott, Denn & Driker* (by *Robert E. Kass* and *Elaine Fieldman*), for plaintiffs Roberts.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch,* Assistant Attorney General, for the defendant in *Roberts,* and *John W. Jackson, Jr.,* Assistant Attorney General, for the defendant in *Chocola.*

Amici Curiae:

*Raymond & Dillon, P.C.* (by *R. Peter Prokop* and *Robert E. Forrest*), for Frederick M. and Joan S. Sibley.

*Andrew M. Savel* for State Bar of Michigan, Taxation Section.

BOYLE, J. We granted leave in these cases to resolve a conflict among panels of the Court of Appeals regarding the taxability of Michigan residents on their distributable income shares in out-of-state subchapter S corporations. The Department of Treasury has taken the position that such distributable shares are nonbusiness dividend income, fully taxable in this state and ineligible for a statutory tax credit for income tax paid to the corporate-situs state. The Court of Appeals ap-

proved that treatment in *Wilson v Dep't of Treasury,* 122 Mich App 711; 333 NW2d 3 (1982); however, a contrary result was reached in one of the cases before us today, *Chocola v Dep't of Treasury,* 132 Mich App 820; 348 NW2d 290 (1984), allowing Michigan residents to *exclude* out-of-state subchapter S income from their Michigan tax base and to receive a statutory credit for taxes paid out-of-state on any such income ultimately taxed in Michigan.

We hold that subchapter S income may be apportioned and thereby excluded from a Michigan resident's tax base pursuant to validly promulgated Department of Treasury rules. In addition, to the extent subchapter S income is ultimately taxed both in Michigan and out-of-state, the taxpayer is entitled to a statutory tax credit.

I

*Chocola v Department of Treasury*

Plaintiffs J. Byron Chocola and Caryl M. Chocola are Michigan residents who own stock in an Indiana subchapter S corporation, Brock Manufacturing, Inc., doing business in Indiana. For the 1975 and 1976 tax years, appellants deducted from their Michigan tax base their distributable income shares in Brock. The Department of Treasury disallowed the deductions and assessed additional taxes on the Brock income plus interest. Plaintiffs challenged the department's action in the State Board of Tax Appeals, arguing in the alternative for a tax credit under MCL 206.255; MSA 7.557(1255) for taxes paid to Indiana on the same income. The board agreed with the department that the Brock income was allocable to—and hence fully taxable in—Michigan; however, the board found plaintiffs entitled to the credit provided in

MCL 206.255; MSA 7.557(1255). The Court of Appeals ruled in favor of the plaintiffs on both issues, holding that the Brock income was apportionable —and hence excludable from the Michigan tax base—and that plaintiffs are entitled to a tax credit for taxes paid to Indiana on income finally subjected to tax in Michigan.

We granted leave to appeal, directing the parties to brief the following questions:

> (1) whether Michigan residents must pay Michigan income tax on their share of distributable income from an Indiana Subchapter S corporation, and
> (2) whether Michigan residents may claim a credit against the Michigan income tax for taxes paid to the State of Indiana on the same distributable income. [419 Mich 868 (1984).]

### Roberts v Department of Treasury

Plaintiffs Donald H. Roberts and Anne B. Roberts were Michigan residents and shareholders of an Idaho subchapter S corporation, Sawtooth Lumber Company, during the 1977, 1978, 1979, 1980, and 1981 tax years. Sawtooth conducted no activities in Michigan during that time. Plaintiffs deducted from their Michigan tax base for those years their distributable income shares in Sawtooth. The Department of Treasury disallowed the deductions and assessed deficiencies for each of those years, and plaintiffs challenged the department's determinations in the Michigan Tax Tribunal. The Tax Tribunal affirmed the department's inclusion of the Sawtooth income in the plaintiffs' Michigan tax base, but allowed the plaintiffs a credit under MCL 206.255; MSA 7.557(1255) for taxes paid to Idaho on the same income. On the department's appeal, the Court of Appeals ordered

the case held in abeyance pending our decision in *Chocola.*

We granted the plaintiffs' delayed application for leave to appeal prior to decision by the Court of Appeals and ordered that the case be argued and submitted with *Chocola.* 419 Mich 916 (1984).

II

Chapter I of the Michigan Income Tax Act of 1967 defines "taxable income" as federally defined adjusted gross income, subject to a list of adjustments that include "[a]djustments resulting from the allocation and apportionment provisions of Chapter 3." MCL 206.30(1)(k); MSA 7.557(130)(1)(k). Chapter 3 of the act contains the following provisions:

> Sec. 103. Any taxpayer having income from business activity which is taxable both within and without this state, other than the rendering of purely personal services by an individual, shall allocate and apportion his net income as provided in this act. [MCL 206.103; MSA 7.557(1103).]
>
> Sec. 105. For purposes of allocation and apportionment of income from business activity under this act, a taxpayer is taxable in another state if (a) in that state he is subject to a net income tax, a franchise tax measured by net income, a franchise tax for the privilege of doing business or a corporate stock tax, or (b) that state has jurisdiction to subject the taxpayer to a net income tax regardless of whether, in fact, the state does or does not. [MCL 206.105; MSA 7.557(1105).]
>
> Sec. 110. (1) In the case of a resident individual, estate or trust all taxable income from any source whatsoever, except that attributable to another state under the provisions of sections 111 to 115 and subject to the credit provisions of section 255, is allocated to this state.

* * *

(4) Rents and royalties from real or tangible personal property, capital gains, interest, dividends or patent or copyright royalties, to the extent that they constitute a nonbusiness income, shall be allocated as provided in sections 111 to 114. [MCL 206.110; MSA 7.557(1110).]

Sec. 113. Interest and dividends are allocable to this state if the taxpayer is a resident partnership, estate or trust or individual of this state or has a commercial domicile in this state. [MCL 206.113; MSA 7.557(1113).]

Sec. 115. All business income, other than income from transportation services shall be apportioned to this state by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is 3. [MCL 206.115; MSA 7.557(1115).]

"Business income" is defined in Chapter 1 of the act:

"Business income" means income arising from transactions, activities and sources in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, rental, management and disposition of the property constitutes integral parts of the taxpayer's regular trade or business operations. [MCL 206.4(2); MSA 7.557(104)(2).]

Under these provisions, a Michigan resident's income from any source is allocated to Michigan *unless* statutorily attributable to another state. Business income is apportioned to Michigan by a three-part formula if the income is also taxable in another state. Nonbusiness income—defined as "all income other than business income," MCL 206.14(1); MSA 7.557(114)(1)—is allocated in §§ 111 to 114 of the act if in the form of rents or royalties

from property, capital gains, interest, dividends, or patent or copyright royalties. Section 113 allocates to Michigan "dividends" received by a resident individual taxpayer.

The instant cases require application of the foregoing provisions to distributable income from subchapter S corporations. For federal taxation purposes, subchapter S of the Internal Revenue Code, 26 USC 1371-1379,[1] allows a qualifying corporation to elect subchapter S status and thereby avoid federal taxation at the corporate level, instead creating a pass-through of income that is taxed at the shareholder level. The effect is to treat electing corporations more like partnerships, since partnership income flows through to the partners and is taxed accordingly. Specifically, 26 USC 1373 provides that any undistributed taxable income remaining at the end of a subchapter S corporation's taxable year is *deemed* to have been distributed pro rata to each of the shareholders as a dividend for that year.[2]

At the shareholder level, 26 USC 61-62 defines

---

[1] In 1982, subchapter S was amended to conform the taxation of electing corporations even more to the partnership model. See 26 USC 1361-1379. Since the tax years at issue in these appeals predate the amendment, references in this opinion will be to the former provisions of subchapter S.

[2] The section provides, in part:

"(a) General rule.—The undistributed taxable income of an electing small business corporation for any taxable year shall be included in the gross income of the shareholders of such corporation in the manner and to the extent set forth in this section.

"(b) Amount included in gross income.—Each person who is a shareholder of an electing small business corporation on the last day of a taxable year of such corporation shall include in his gross income, for his taxable year in which or with which the taxable year of the corporation ends, the amount he would have received as a dividend, if on such last day there had been distributed pro rata to its shareholders by such corporation an amount equal to the corporation's undistributed taxable income for the corporation's taxable year. For purposes of this chapter, the amount so included shall be treated as an amount distributed as a dividend on the last day of the taxable year of the corporation." 26 USC 1373.

"adjusted gross income" to include "all income from whatever source derived," which necessarily includes the distributable income passed through to the subchapter S shareholder. Thus, the shareholders are federally taxed on their share of both the distributed and undistributed taxable income of the subchapter S corporation. Since under the Michigan income tax statute "taxable income" is defined as federal "adjusted gross income," the subchapter S distributable income is also included in the taxpayer's state tax base, subject, of course, to the apportionment and allocation rules.

The Department of Treasury in both *Chocola* and *Roberts* relies on an apparently straightforward application of the foregoing provisions of Michigan and federal law to conclude that the plaintiffs' distributable income from out-of-state subchapter S corporations is necessarily allocated to Michigan: plaintiffs' distributed and undistributed subchapter S income is dividend income under IRC 1373, and dividend income received by a Michigan resident is allocated to Michigan for state tax purposes under MCL 206.113; MSA 7.557(1113). Accordingly, the department concludes that the plaintiffs' subchapter S income is entirely allocated to Michigan and hence cannot be deducted from the plaintiffs' state tax base.

Although facially appealing, the department's argument fails to consider language in the Michigan statute suggesting that such a strict approach to dividend income is not required. MCL 206.110; MSA 7.557(1110) provides in relevant part:

Sec. 110. (1) In the case of a resident individual, estate or trust all taxable income from any source whatsoever, except that attributable to another state under the provisions of sections 111 to 115 and subject to the credit provisions of section 255, is allocated to this state.

* * *

(4) Rents and royalties from real or tangible personal property, capital gains, interest, dividends or patent or copyright royalties, *to the extent that they constitute a nonbusiness income,* shall be allocated as provided in sections 111 to 114. [Emphasis added.]

Subsection (1) contains the general rule allocating all forms of taxable income received by resident individuals to Michigan, subject to the exceptions provided in §§ 111 to 115 of the act. The business income exception—apportioning business income according to a three-part formula—is contained in § 115, one of the sections referred to in this subsection. Subsection (4) refers to the allocation rules applicable to certain forms of taxable income, including dividends, "to the extent that they constitute a nonbusiness income." Quite appropriately, the business income provision is therefore *not* referred to in this subsection.

Reading the two subsections together, it appears that the Legislature contemplated that certain income of the types enumerated in subsection (4) might constitute business income rather than "nonbusiness income," thereby coming within the business income exception referred to in subsection (1), rather than the nonbusiness income exceptions listed in subsection (4). In other words, since subsection (4) expressly limits itself to nonbusiness income in the forms listed, business income in those same forms would appear to be eligible for the business income apportionment formula referred to in subsection (1). In the case of dividend income, apportionability will depend on whether the income also qualifies as business income of the taxpayer, since nonbusiness dividend income must be allocated to Michigan under MCL 206.110; MSA 7.557(1110) and MCL 206.113; MSA 7.557(1113).

Accordingly, we reject the department's argument that the statute requires allocation of dividend income to Michigan regardless of its character. Rather, we construe the statute to permit apportionment of dividends that qualify as business income in the hands of resident taxpayers. Thus, the crucial inquiry is not whether the income is received in the form of a dividend, but whether it can fairly be characterized as business income.

The question whether subchapter S distributable income is apportionable business income has received inconsistent administrative and judicial treatment in this state. In *Craighead v Dep't of Treasury,* Mich Tax Rep (CCH), ¶ 200-751 (1978), the department took the position that *losses* incurred in a Colorado subchapter S corporation were allocable to Colorado and therefore were required to be added back to the tax base of Michigan resident shareholders. The Board of Tax Appeals disagreed, however, relying on a former provision of the act that required subchapter S shareholders to include their distributable income shares in their Michigan tax base without regard to where the corporation was located or did business.[3] Reasoning that losses follow income for these purposes, the board concluded that the Colorado losses need not be added back to the plaintiffs' Michigan tax base. In *Craighead,* therefore, the department forwarded a position consistent with that of the instant plaintiffs—*i.e.,* the results of investments in subchapter S corporations (in-

[3] 1967 PA 281, § 81 provided in part:
"A corporation which has filed a proper election under subchapter S of the internal revenue code shall not be subject to the tax imposed by this act with respect to the taxable years for which such election is in effect. Each participant shall include his proportionate share of the taxable income whether or not distributed and whether or not distributable."

cluding losses) are business income allocable to another state—but was overruled by the Board of Tax Appeals.

Two factors significantly undercut the persuasive authority of the *Craighead* decision. First, *Craighead* was decided under a provision of the Income Tax Act[4] that has since been repealed.[5] That provision recited the general rule exempting an electing corporation from the then-existing corporate income tax and taxing the shareholders instead on their pro-rata shares of the subchapter S income. The Board of Tax Appeals had relied on the absence of any apportionment language in that section in concluding that subchapter S income shares were not apportionable.[6]

Second, pursuant to statutory authority,[7] the department in 1978 promulgated rules relating

[4] See n 3.

[5] The section was repealed by 1975 PA 233, § 2, which was connected to the enactment of the Single Business Tax Act, 1975 PA 228.

The department argues that the repeal of 1967 PA 281, § 81 signaled a complete withdrawal of legislative recognition of subchapter S corporate status under the state Income Tax Act. We disagree. After the repeal, subchapter S recognition remained built into the state income tax scheme through the incorporation of federally defined "adjusted gross income," which includes subchapter S pass-through income. In the absence of a clear legislative directive to the contrary, we do not view the repeal as having the sweeping effect the department suggests. The more natural explanation for that repeal is indicated by its connection with the Single Business Tax Act. Since the SBTA replaced the income-oriented corporate tax in Michigan, it was necessary to repeal those provisions of the Income Tax Act, such as § 81, that reflected the former corporate tax system.

[6] Even assuming the continued validity of former § 81 (quoted at n 3), we find it to be dubious authority for the proposition stated in *Craighead*. The section did not purport to *allocate* the income to Michigan, nor was it contained in the chapter of the Income Tax Act dealing with allocation and apportionment.

[7] MCL 16.109; MSA 3.29(9), MCL 16.183; MSA 3.29(83), MCL 205.3; MSA 7.657(3), and MCL 205.13; MSA 7.657(13) empower the state Commissioner of Revenue to promulgate rules enforcing the tax laws pursuant to the notice and hearing procedure contained in the Administrative Procedures Act, MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.*

specifically to apportionment and allocation of income.[8] In particular, those rules provide:

> (15) The following forms of income may be claimed as a subtraction from adjusted gross income if not allocated or apportioned to Michigan; conversely, losses not allocated or apportioned to Michigan shall be added to adjusted gross income:
> (a) Trade or business, including farming.
> (b) Rents and royalties from real and personal property.
> (c) Capital gains from the disposition of real and tangible personal property.
> (d) Capital gains from the disposition of intangible personal property.
> (e) Interest and dividends.
> (f) Pensions and annuities.
> (g) Patent and copyright royalties.
>
> \* \* \*
>
> (17) All distributive income from a subchapter S corporation includable in the shareholder's adjusted gross income is subject to tax if allocated or apportioned to Michigan.
> (18) Dividend distributions taxable as ordinary income, plus undistributed income taxable as ordinary income, are apportioned to Michigan if all of the corporation's business activities are confined to Michigan. If the corporation is taxable both within and without Michigan, such income is apportioned to Michigan as provided in sections 115 to 195 of Act No. 281 of the Public Acts of 1967, as amended.
>
> \* \* \*
>
> (20) Distributive income from a subchapter S corporation not allocated or apportioned to Michigan may be claimed as a subtraction from adjusted gross income. Conversely, losses not allocated or apportioned to Michigan shall be added to adjusted gross income. [1979 AC, R 206.12.]

---

[8] 1979 AC, R 206.12. While the rules technically predated the decision in *Craighead* by several months, the Board of Tax Appeals made no mention of their existence or possible effect.

Although contesting its own authority to promulgate the foregoing rules,[9] the department does not deny that these rules in terms provide for the apportionment of subchapter S income results.

Shortly after *Craighead* was decided, the Board of Tax Appeals in *Hassebrock v Dep't of Treasury,* Mich Tax Rep (CCH), ¶ 200-757 (1978), addressed a situation that was the reverse of that in *Craighead* —*i.e.,* the taxability of distributable income of *nonresident* shareholders received from a *Michigan* subchapter S corporation. The department, consistent with its argument in *Craighead* that the results of investments in subchapter S corporations are apportionable to the situs of the corporation, argued for taxability of the income shares in Michigan. The board disagreed, in accordance with its decision in *Craighead,* concluding that the tax on subchapter S distributable income is attributable solely to the state of the taxpayer's residence, Missouri in that case.

Thus, in argument before the Board of Tax Appeals in both *Craighead* and *Hassebrock,* and again through its rulemaking power, the department consistently called for the apportionment of subchapter S income. The board rejected that position, however, relying on a provision of the Income Tax Act that has since been repealed, and apparently ignoring the recent passage of the department rules on point.

When the issue of apportionability of out-of-state subchapter S income was brought before the Court of Appeals in *Wilson v Dep't of Treasury,* 122 Mich App 711; 333 NW2d 3 (1982), the department adopted the board's approach and argued for allo-

---

[9] The department is now in the curious position of challenging its own rules in light of subsequent legal authority. Our holding today reaffirms the validity of those rules, thus leaving the department to established administrative procedures for repeal of the rules should it now wish to implement the statute differently.

cation of out-of-state subchapter S income to Michigan. The Court agreed with that approach, finding that subchapter S income is not business income because the "business" is that of the corporation, not the shareholder. In the case before us today, however, another panel of the Court of Appeals observed a striking similarity between subchapter S income and partnership income, as well as a lack of similarity between subchapter S income and the concept of dividends, leading the Court to conclude that such income is business income subject to apportionment. *Chocola,* 132 Mich App 826-827. The *Chocola* panel also noted the recent promulgation of the department rules on point as supporting the Court's determination. 132 Mich App 827-828.

We find that the department rules reflect a valid administrative interpretation of the Income Tax Act that controls the disposition of these cases. Contrary to the finding of the Court of Appeals in *Wilson,* we do not read the act to require treatment of subchapter S distributable income as nonbusiness income. Subchapter S corporations enjoy unique characteristics that provide a compelling analogy to partnerships, which produce apportionable business income in the hands of member partners, see *Grunewald v Dep't of Treasury,* 104 Mich App 601; 305 NW2d 269 (1981). First, the shareholders are limited in number to twenty-five[10] (thirty-five after the 1982 amendment).[11] Second, the IRC places a ceiling on passive investment income that can be earned by a subchapter S corporation.[12] Third, as noted earlier, subchapter S

---

[10] 26 USC 1371(a).

[11] 26 USC 1361(b).

[12] 26 USC 1372(e)(5) placed a ceiling of twenty percent of gross receipts on income from passive investment, with certain exceptions. The new amendment raises the ceiling to twenty-five percent, with exceptions. 26 USC 1362(d)(3).

income *whether or not distributed* is taxed to the shareholders pro rata.[13] Fourth, net operating losses of a subchapter S corporation are deductible pro rata by the shareholders as a trade or business deduction.[14] Finally, dividend distributions to the shareholders enjoy capital gains treatment to the extent of the shareholders' pro-rata shares of the corporation's net capital gain.[15]

The combined effect of the foregoing characteristics renders a subchapter S shareholder more like a *participant* in the corporation's business and less like a mere *passive investor;* however, we need not rule that the statute *mandates* business income treatment of subchapter S income. Rather, the fact that reasonable minds can differ on the question reinforces our conclusion that the matter is particularly appropriate for administrative resolution in the absence of a clear legislative pronouncement to the contrary.[16] Accordingly, we find the department rules apportioning subchapter S distributable income to constitute a reasonable implementation of the statutory apportionment provisions.

In *Chocola,* the tax years at issue, 1975 and

[13] See n 2.

[14] 26 USC 1374. The amended version simply provides that the character of *any* income or loss item passed through to the shareholder "shall be determined as if such item were realized directly from the source from which realized by the corporation, or incurred in the same manner as incurred by the corporation." 26 USC 1366(b).

[15] 26 USC 1375(a). See the section cited in n 14 for the amended version preserving the character of items passed through to shareholders.

[16] Although the Board of Tax Appeals overruled the department in *Craighead* and *Hassebrock,* those decisions failed to note the existence of the department rules on point, and instead relied on a former section of the act that was repealed in 1975. Similarly, the Court of Appeals decision in *Wilson* completely ignored the existence of the department rules that provided for apportionment of out-of-state subchapter S income received by resident taxpayers. Thus, while we commend the department's desire to conform to the law as set forth in those decisions, we find that the business income character of subchapter S income was properly determined in the first place by the department pursuant to its delegated rulemaking authority.

1976, predated the department rules promulgated in 1978. No preexisting administrative standard governed the apportionability of subchapter S income. Before *Craighead* and *Hassebrock* were decided in 1978, however, the department apparently was taking the position that out-of-state subchapter S income and losses were in fact apportionable. Thus, the taxpayers in *Chocola* acted in accordance both with a reasonable interpretation of the statutory apportionment provision and with prior administrative practice, as well as in accordance with the 1978 rules, in apportioning their Indiana subchapter S distributable income.

In *Roberts,* the tax years at issue, 1977-1981, span a period that extends both before and after promulgation of the rules. We apply the same analysis as in *Chocola* to uphold the taxpayers' 1977 apportionment and find that the rules expressly direct apportionment beginning with the 1978 tax year.

### III

Our resolution of the apportionment issue leaves open the possibility that some distributable income from an out-of-state subchapter S corporation will be taxed twice—in the corporate situs state and in Michigan. For example, the "home" state might tax the entire amount of distributable income, while Michigan might tax a fractional share of the income through application of the three-part apportionment formula contained in MCL 206.115; MSA 7.557(1115). We agree with the determinations of the Board of Tax Appeals and the Court of Appeals in *Chocola,* and the Michigan Tax Tribunal in *Roberts,* that MCL 206.255; MSA 7.557(1255) allows a tax credit under these circumstances.

MCL 206.255; MSA 7.557(1255) provides in part:

(1) A resident individual or resident estate or trust shall be allowed a credit against the tax otherwise due under this act for the amount of an income tax imposed on a resident individual or resident estate or trust for the taxable year by another state of the United States or a political subdivision of another state of the United States, the District of Columbia, or a Canadian province, on income derived from sources without this state which is also subject to tax under this act.

The department's principal argument on appeal is that the plaintiffs' distributable subchapter S income is not "income derived from sources without this state," since the "source" of the income is the shares of stock which necessarily have the same situs as their owners. Accordingly, the source of plaintiffs' subchapter S income is not without this state, but is in Michigan. In addition, the department argues that the credit cannot be allowed because Michigan law does not recognize the taxing jurisdiction of other states over Michigan shareholders in subchapter S corporations located in those states.

We reject both these arguments as untenable. A common-sense reading of the phrase "sources without this state" suggests that distributable income from an out-of-state subchapter S corporation comes within the purview of this section. Moreover, our determination today that such income can fairly be characterized as business income reinforces the conclusion that the source of the income is indeed in the corporate-situs state. In addition, the section in terms provides for a credit "for the amount of an income tax imposed . . . by another state." There is no requirement that Michigan first recognize the jurisdiction of the state

imposing the tax before a credit can be granted—the tax need only be "imposed." Accordingly, provided the prerequisites are met, the section provides a credit against the Michigan tax owed on such distributable income that is also taxed in the situs state.

## IV

In *Chocola,* we affirm the Court of Appeals order remanding for recomputation of the plaintiffs' tax liability.

In *Roberts,* we vacate the order of the Michigan Tax Tribunal and remand for recomputation of the plaintiffs' tax liability in accordance with the principles set forth in this opinion.

WILLIAMS, C.J., and RYAN, BRICKLEY, CAVANAGH, and RILEY, JJ., concurred with BOYLE, J.

LEVIN, J., took no part in the decision of these cases.